NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250449-U

NO 4-25-0449

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 23JA217 |
| v. | ) | |
| Jade P., | ) | Honorable |
| Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

---

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Harris and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed, concluding no issue of arguable merit could be raised on appeal.

¶ 2    In September 2024, the State filed a petition to terminate the parental rights of respondent, Jade P., as to her minor daughter, A.P. (born October 14, 2022). (A.P.'s father, Raymond S., is not a party to this appeal.) In April 2025, the trial court terminated respondent's parental rights and changed the permanency goal to adoption.

¶ 3    Respondent filed a notice of appeal, and the trial court appointed counsel to represent her. Appointed counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re S.M.*, 314 Ill. App. 3d 682 (2000), arguing respondent's appeal presents no potentially meritorious issues for review. This court gave respondent the opportunity to respond to the motion. Respondent did not file a response. For the reasons that follow, we grant the motion

to withdraw and affirm the court's judgment.

¶ 4                                I. BACKGROUND

¶ 5        In June 2023, the State filed a petition to adjudicate A.P. neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The State alleged A.P.'s environment was injurious to her welfare because (1) respondent's substance abuse prevented her from properly parenting A.P. (count I); (2) A.P. was subjected to domestic violence (count II); and (3) respondent battered Raymond S. in A.P.'s presence (count III).

¶ 6        In August 2023, pursuant to an agreement, the State dismissed counts II and III, and the trial court adjudicated A.P. neglected as to count I. The court then ordered respondent to complete services related to all counts. Respondent complied.

¶ 7        In October 2023, the trial court, pursuant to the State's recommendation, found respondent fit and ordered guardianship and custody of A.P. returned to her.

¶ 8        In November 2023, respondent was driving with A.P. in her car. The car ran out of gas and the battery died. Respondent and A.P. were stranded on the side of the road for three hours without heat. A.P. was not dressed appropriately, and she had bruises on her forehead and near her eye that respondent could not explain. Respondent was intoxicated, and several bottles of alcohol were found inside her car. She was arrested for driving under the influence (DUI). Based on these facts, the State filed a motion to modify the dispositional order.

¶ 9        At a subsequent shelter care hearing, respondent voluntarily agreed that immediately removing A.P. from her care was urgent and necessary. Thus, temporary custody and guardianship of A.P. was given to the Illinois Department of Children and Family Services (DCFS).

¶ 10     In December 2023, a hearing on the State's motion to modify the dispositional order was held. Respondent voluntarily stipulated to the State's motion. A new dispositional order was entered, finding respondent unfit or unable but not unwilling to have A.P. placed in her care. Guardianship and custody of A.P. remained with DCFS, who had discretion to place A.P., and a goal to return A.P. home in 12 months was set. The trial court ordered respondent to complete services and work toward the goal of having A.P. returned to her.

¶ 11     In April 2024, the trial court found respondent had not made reasonable efforts to regain custody of A.P. Specifically, in derogation of her service plan tasks, respondent was unsuccessfully discharged from substance abuse treatment, parenting education classes, and individual counseling. Additionally, although six of respondent's drug and alcohol tests were negative during an approximate two-month period, one was positive.

¶ 12     On May 25, 2024, respondent was arrested for DUI. While in prison, respondent participated in Alcoholics Anonymous meetings, took a class offered by a local college, and worked in the prison's laundry room.

¶ 13     In August 2024, the trial court found respondent had made neither reasonable efforts nor reasonable progress toward having A.P. returned to her. Accordingly, the court changed the goal for A.P. to substitute care pending the court's determination on the termination of parental rights.

¶ 14     In September 2024, the State petitioned to terminate respondent's parental rights, alleging respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to A.P.'s welfare (750 ILCS 50/1(D)(b) (West 2024)) (count I); (2) did not protect A.P. from conditions within her environment that were injurious to her welfare (*id.* § 1(D)(g)) (count II); (3) was depraved (*id.* § 1(D)(i)) (count III); (4) failed to make reasonable efforts to correct the

conditions that resulted in A.P. being removed from respondent's care in the nine months following the adjudication of neglected, *i.e.*, from November 2023 to August 2024 (*id.* § 1(D)(m)(i)) (count IV); and (5) did not make reasonable progress toward the return of A.P. during the same time period (*id.* § 1(D)(m)(ii)) (count V).

¶ 15    In January 2025, a fitness hearing on the petition to terminate parental rights was held. Without objection, the trial court took judicial notice of various documents included in the record and admitted 10 of the State's exhibits. The exhibits concerned respondent's past convictions for aggravated DUI, driving with a revoked license, and aggravated battery. The exhibits also contained the family service plans and integrated assessments.

¶ 16    Megan Denk, a program director at Lutheran Social Services of Illinois (LSSI), testified at the hearing that respondent (1) had sporadic contact with social services; (2) was unsuccessfully discharged from substance abuse treatment when (a) she stopped attending and (b) the results of her drugs tests were suspicious or positive; (3) failed to complete a mental health assessment; (4) did not complete a domestic violence assessment; (5) was unsuccessfully discharged from individual counseling; and (6) had sporadic video visits with A.P. Denk testified she was concerned about respondent's fitness because her substance abuse and poor mental health affected her judgment and ability to safely parent A.P.

¶ 17    The trial court found respondent unfit as to all five counts.

¶ 18    The best interest hearing was held in April 2025. Without objection, the trial court took judicial notice of all the evidence presented at the January 2025 fitness hearing and admitted three reports prepared by LSSI, which generally provided the same information. The last report, filed on April 25, 2025, provided A.P. received food, clothing, and shelter daily. The report also detailed A.P. attended daycare and had friends there, had been in the care of social services for

458 days, and needed to be placed in a permanent home.

¶ 19        Angelise Croft, a child welfare specialist for LSSI who prepared the April 25, 2025, report, testified at the hearing that A.P. was placed with a foster family for one year and was very recently placed with close relatives of that family. Croft explained the initial foster family, who could not adopt A.P., wanted to ensure A.P. remained in the extended family, and the second foster family, who had extensive contact with A.P., expressed a desire to adopt her. Croft suggested A.P. needed stability because unstableness can cause trauma and mental health problems. Croft confirmed A.P. had no medical issues and was meeting her developmental milestones. Moreover, Croft asserted all the needs of A.P., who was two years old, were met, she felt safe and happy at the second family's home, she felt like a part of that family and the extended family, and she was well bonded with them. On cross-examination, when asked about respondent's relationship with A.P., Croft stated they had a "pretty good relationship."

¶ 20        Respondent testified she wanted A.P. placed with the friend of a coworker, with whom A.P. was not very familiar. Respondent, who was incarcerated, believed she would be released from prison on May 15, 2026. While in prison, respondent completed parenting and anger management courses. She had not started a drug education course, which she hoped to start in the summer, because there were no facilitators for that course.

¶ 21        After considering the best interest factors, the trial court terminated respondent's parental rights and changed the permanency goal to adoption. In doing so, the court noted A.P. was developing attachments and recognizing people involved in her life who cared about her. In contrast, respondent had been in custody most of A.P.'s life and was not in a position to care for her or provide her with stability or a sense of community or family.

¶ 22        This timely appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24          Respondent's appellate counsel moves to withdraw. Counsel supports his motion with a memorandum of law providing a statement of facts, a discussion of potential claims, and arguments why those issues lack arguable merit. Notice of counsel's request to withdraw was sent to respondent's last known address. Respondent was notified of her right to respond. No response was filed.

¶ 25          Counsel submits it would be frivolous to argue the trial court erred in finding (1) respondent unfit and (2) it was in the best interest of A.P. to terminate respondent's parental rights. We agree.

¶ 26          Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2024)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 27          A determination of parental unfitness involves factual findings and credibility determinations the trial court is in the best position to make. See *In re M.I.*, 2016 IL 120232, ¶ 21 ("[T]he trial court's opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.)). A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.*

¶ 28          Here, although the trial court found respondent unfit on five different bases, some

of which may be disputable, we consider only whether respondent failed to make reasonable progress toward the return of A.P. to her care during the nine-month period at issue (count V). See *In re P.M.C.*, 387 Ill. App. 3d 1145, 1149 (2009) ("Only one ground of unfitness needs to be proved by clear and convincing evidence for the court to find a parent unfit.").

¶ 29 Under section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit for failing "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2024). "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). Reasonable progress exists when the trial court

> "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 30 We have emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). A trial court may only consider evidence from the relevant time period in determining a parent's fitness based on reasonable progress. *Reiny S.*, 374 Ill. App. 3d at 1046 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38 (2003)).

¶ 31 In this case, A.P. was removed from respondent's care in November 2023, when the trial court granted the State's motion to modify the dispositional order. This happened because

respondent was arrested for DUI while A.P. was in her car. As part of her service plan, respondent was ordered to complete various services directly related to the conditions that caused A.P.'s removal. The uncontradicted evidence revealed respondent failed to successfully complete these services. Moreover, nothing in the record establishes respondent will complete these services and have A.P. returned to her in the near future. Thus, we find the court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 32    Counsel next submits it would be frivolous to argue it was not in A.P.'s best interest to terminate respondent's parental rights.

¶ 33    When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* at 364. The State must prove by a preponderance of the evidence termination of parental rights is in the minor's best interest. *Id.* at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to

substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071(2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). "[A best interest determination] is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Jay. H.*, 395 Ill. App. 3d at 1071.

¶ 34        Here, the evidence demonstrated A.P. had a strong bond with her foster family, who she saw extensively while in the care of her first foster family. The foster parents provide for A.P.'s needs, and A.P. is reaching her developmental milestones. A.P. feels secure and happy with her foster family and needs stability. The trial court considered the evidence presented at the best interest hearing in relation to the statutory best interest factors and found they weighed in favor of terminating respondent's parental rights. We cannot conclude the evidence in the record clearly demonstrates the court should have reached the opposite result, *i.e.*, not terminated respondent's parental rights. Accordingly, the court's best interest determination was not against the manifest weight of the evidence.

¶ 35        After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Accordingly, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 36                                    III. CONCLUSION

¶ 37          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 38          Affirmed.